BI04 (FORM 104) (08/07)

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|

| PLAINTIFFS<br>**Janice G. Marsh, Chapter 7 Trustee** | DEFENDANTS<br>**Financial Freedom Senior Funding Corporation** |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Weiner Law Firm, P.C.<br>1441 Main Street Suite 610 Springfield, MA 01103<br>413-732-6840 | ATTORNEYS (If Known) |
| PARTY (Check One Box Only) □ Debtor □ U.S. Trustee/Bankruptcy Admin □ Creditor □ Other □ Trustee | PARTY (Check One Box Only) □Debtor □U.S. Trustee/Bankruptcy Admin □Creditor □Other □Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED) Pursuant to 11 U.S.C. §§ 544 and 551 of the U.S. Bankruptcy Code, and Bankruptcy Rule 7001 of the Federal Rules of Bankruptcy Procedure, the Plaintiff seeks to avoid the mortgage of Financial Freedom Senior Funding Corporation on the real property of the above-named Debtors and preserve the value of said transfer for the benefit of the bankruptcy estate.

**NATURE OF SUIT** (Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property** □ 11-Recovery of money/property - §542 turnover of property □ 12-Recovery of money/property - §547 preference □ 13-Recovery of money/property - §548 fraudulent transfer ☒ 14-Recovery of money/property - other **FRBP 7001(2) – Validity, Priority or Extent of Lien** ☒ 21-Validity, priority or extent of lien or other interest in property **FRBP 7001(3) – Approval of Sale of Property** □ 31-Approval of sale of property of estate and of a co-owner - §363(h) **FRBP 7001(4) – Objection/Revocation of Discharge** □ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation** □ 51-Revocation of confirmation **FRBP 7001(6) – Dischargeability** □ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims □ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud □ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny **(continued next column)** **FRBP 7001(6) – Dischargeability (continued)** □ 61-Dischargeability - §523(a)(5), domestic support □ 68-Dischargeability - §523(a)(6), willful and malicious injury □ 63-Dischargeability - §523(a)(8), student loan □ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support) □ 65-Dischargeability - other **FRBP 7001(7) – Injunctive Relief** □ 71-Injunctive relief – imposition of stay □ 72-Injunctive relief – other **FRBP 7001(8) Subordination of Claim or Interest** □ 81-Subordination of claim or interest **FRBP 7001(9) Declaratory Judgment** □ 91-Declaratory judgment **FRBP 7001(10) Determination of Removed Action** □ 01-Determination of removed claim or cause **Other** □ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.* □ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| □ Check if this case involves a substantive issue of state law | □ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| □ Check if a jury trial is demanded in complaint | Demand $ |
| Other Relief Sought | |

**B104 (FORM 104) (08/07), Page 2**

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Ralph P. Vento and June A. Vento | BANKRUPTCY CASE NO.<br>15-42046 | |
| DISTRICT IN WHICH CASE IS PENDING<br>Massachusetts | DIVISION OFFICE<br>Central | NAME OF JUDGE<br>Christopher J. Panos |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE<br>10 11 17 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br><br>Gary M. Weiner, Attorney for Janice G. Marsh, Chapter 7 Trustee | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MASSACHUSETTS
## CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>**RALPH P. VENTO**<br>**JUNE A. VENTO**<br><br>Debtors | **Chapter 7**<br>**Case No.:  15-42046-CJP** |
| **JANICE G. MARSH, CHAPTER 7 TRUSTEE,**<br>Plaintiff<br>v.<br><br>**FINANCIAL FREEDOM SENIOR FUNDING**<br>**CORPORATION**<br>Defendants | **Adv. Pro. No.:  17-** |

## COMPLAINT TO AVOID MORTGAGES

This is an action commenced by Janice G. Marsh, Esq. ("Trustee"), duly appointed Chapter 7 Trustee of the Estate of Ralph and June Vento, by and through her counsel, Weiner Law Firm, P.C., and pursuant to 11 U.S.C. §§ 544 and 551 of the United States Bankruptcy Code and Rule 7001 of the Federal Rules of Bankruptcy Procedure to avoid the mortgage of Financial Freedom Senior Funding Corporation (hereinafter "Financial Freedom") on the real property of the above-named Debtors, and preserve the value of said transfer for the benefit of the bankruptcy estate.

1

## JURISDICTION

1.   This Court has jurisdiction over this matter pursuant to the provisions of 28 U.S.C. § § 157 and 1334.   This matter is a core proceeding as defined in 28 U.S.C. § 157 (b) (2) (A), (K) and (O), and is brought pursuant to Bankruptcy Rule 7001(1).

## PARTIES

2.   The Plaintiff, Janice G. Marsh, Esq., is the duly appointed, qualified and acting Trustee in the above captioned case (the "Trustee").   The Trustee has a business address of 446 Main Street, 19th Floor, Worcester, MA 01608.

3.   The Defendant, Financial Freedom Senior Planning Corporation ("Financial Freedom"), is a corporation with a principal place of business at 192 Technology Parkway, Suite 100, Norcross, GA 30092.

## FACTUAL ALLEGATIONS

4.   On October 23, 2015, the Debtors filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code.

5.   On or about October 26, 2015, the Plaintiff, Janice G. Marsh, was appointed Chapter 7 Trustee and she continues to serve in that capacity.

6.   On or about August 18, 2017, the Trustee filed an Application to Employ Weiner Law Firm, P.C. as counsel for the Trustee which was subsequently allowed by the Court on September 12, 2017.

7.    On Schedule A of their bankruptcy petition, the Debtors scheduled their interest in real property located at 21 Westminster Drive #65, Marlborough, MA 01752 (the "Property") and indicated that the property has a current value of $305,000.00.

8.    On Schedule D of their bankruptcy petition, the Debtors scheduled "Freedom Financial" as the only mortgage holder on the Property in the amount of $253,894.00.

9.    On Schedule C of their bankruptcy petition, the Debtors assert a homestead exemption in the amount of $200,000.00 under Massachusetts law in the Property.

10.    On or about November 15, 1999, the Debtors purchased the real property known as 21 Westminster Drive #65, Marlborough, Middlesex County, Massachusetts 01752, for the sum of $218,900.00 (the "Property"). A copy of the deed to the Property recorded on November 15, 1999 in the Southern Middlesex County Registry of Deeds at Book 30866, Page 498 is attached hereto as Exhibit "A".

11.    On or about December 18, 2008, the Debtors executed a reverse mortgage on the Property to Financial Freedom (the "First Mortgage"). This mortgage was recorded on December 18, 2008 in the Southern Middlesex Registry of Deeds at Book 51988, Page 169.

12.    On or about October 16, 2009, Financial Freedom recorded an Assignment of Mortgage, assigning all their rights in the First Mortgage to Mortgage Electronic Registration Systems Inc., which assignment was recorded in the Southern Middlesex Registry of Deeds at Book 53683 Page 237.

13.    On or about January 15, 2016, Mortgage Electronic Registration Systems Inc. recorded an Assignment of Mortgage, assigning all their rights in the First Mortgage to CIT Bank, NA, which assignment was recorded in the Southern Middlesex Registry of Deeds at Book 66676 Page 176.  Upon information and belief, CIT Bank, NA is the present holder of the First Mortgage.

14.    On or about December 18, 2008, the Debtors executed a second reverse mortgage on the Property to Financial Freedom (the "Second Mortgage").  This mortgage was recorded on December 18, 2008 in the Southern Middlesex Registry of Deeds at Book 51988, Page 184.  A copy of the Second Mortgage is attached hereto as Exhibit "B".

15.    The notary acknowledgment on page 9 of the Second Mortgage fails to state that the Debtors executed the Second Mortgage "voluntarily" or that their execution of the Second Mortgage was a "free act and deed."

## COUNT I
## Avoidance of Second Mortgage Pursuant to 11 U.S.C. § 544(a)(3)

16.    Paragraphs 1 through 15 are restated herein and incorporated by reference.

17.    Under the established case law, "An acknowledgment is the formal statement of the grantor to the official authorized to take the acknowledgment that the execution of the instrument was [their] free act and deed." McOuatt v. McOuatt, 320 Mass. 410, 69 N.E.2d 806, 810 (Mass. 1946) (emphasis added).

18.    The acknowledgment to the Second Mortgage is materially and patently defective under Massachusetts law.

19.    M.G.L. c. 222 § 1 defines "acknowledgment" as "a notarial act in which an

individual, at a single time and place appears, in person, before a notary public, is identified by the notary public and indicates to the notary public that the signature on the document before the notary was <u>voluntarily affixed by the individual for the purposes stated within the document or that the signature on the document was the individual's free act and deed</u>." (emphasis added)

20. Courts have consistently held that the omission of this "voluntary" or "free act and deed" language is a material defect. *See generally* <u>DeGiacomo v. James B. Nutter & Co. (In re Reznikov)</u>, 567 B.R. 239 (2017).

21. When a mortgage acknowledgment contains a material defect it "cannot be legally recorded, and if recorded the mortgage does not, as a matter of law, provide constructive notice to future purchasers." <u>Agin v. Mortg. Elec. Registration Sys., Inc. (In re Bower)</u>, 2010 Bankr. LEXIS 3641 (Bankr. D. Mass. Oct. 13, 2010).

22. Pursuant to 11 U.S.C. § 544(a)(3), as of the commencement of the case, the Trustee has the rights and powers of a bona fide purchaser of the Property.

23. Pursuant to her status as a bona fide purchaser, the Trustee may avoid the Mortgage pursuant to 11 U.S.C. § 544(a)(3) because it was not property perfected against the Property as a result of the defective acknowledgment as of the date of the Debtors' bankruptcy filing.

24. As a result of the foregoing, the Trustee seeks a declaration avoiding the Second Mortgage.

## COUNT II
### Preservation of Avoided Second Mortgage Pursuant to 11 U.S.C. § 551

25.    Paragraphs 1 through 24 are restated herein and incorporated by reference.

28.    Pursuant to 11 U.S.C. § 551, the Trustee's exercise of her powers of avoidance pursuant to 11 U.S.C. § 544 automatically preserve such an interest for the benefit of the bankruptcy estate and allows the Trustee to assume the Second Mortgage-holder's status as the second position mortgage holder against the Property.

29.    As a result of the foregoing, the Trustee seeks a declaration that the Second Mortgage is preserved for the benefit of the bankruptcy estate pursuant to 11 U.S.C. § 551 and that the Trustee assumes the status as the second position mortgage holder on the Property.

**WHEREFORE**, the Trustee respectfully requests this Court to enter a judgment:

1.    Pursuant to Count I, declaring that the Second Mortgage is voided;

2.    Pursuant to Count II, declaring that the Second Mortgage is preserved for the benefit of the bankruptcy estate as the second position mortgage holder; and

3.    For such other and further relief as the Court deems just and proper.

6

JANICE G. MARSH, CHAPTER 7 TRUSTEE
Of the Estate of Ralph and June Vento,
By her Counsel,


/s/Gary M. Weiner
Gary M. Weiner, Esq. BBO# 548341
Robert E. Girvan III, Esq. BBO# 569063
Weiner Law Firm, P.C.
1441 Main Street, Suite 610
Springfield, MA 01103
Phone - (413) 732-6840 - Fax (413) 785-5666
Email:  gweiner@Weinerlegal.com
Dated:  October 11, 2017

7

EXHIBIT

A

# THE VILLAGES AT MARLBOROUGH EAST CONDOMINIUM
## UNIT DEED

**FIRST COLONY MANAGEMENT CO., INC.**, a Massachusetts corporation with a usual place of business at 38 Brigham Street, Marlborough, Middlesex County, Massachusetts, for consideration of **Two Hundred Eighteen Thousand Nine Hundred Dollars    ($218,900.00)** paid,

**Grants to   Ralph P. Vento and June A. Vento husband and wife as tenants by the entirety** of **73 Minehan Lane, Marlborough, MA 01752** .

**WITH QUITCLAIM COVENANTS,**

Unit No. **65** in Building No. **13** located at **21 Westminster Drive (a B/2 car Unit)** in The Villages at Marlborough East Condominium in Marlborough, Middlesex County, Massachusetts, created by a Master Deed dated August 6, 1998, recorded with the Middlesex South District Registry of Deeds as Instrument No. 799 of August 10, 1998, as it may be amended from time to time by instruments duly recorded (the "Condominium"), together with an undivided percent interest appertaining to said unit in the common areas and facilities of said Condominium as set forth in the Master Deed, as it may be amended from time to time.

This unit shall have a **0.995%** undivided interest in the common areas and facilities of said Condominium upon completion of all of the phases of the Condominium.

The said premises are conveyed subject to and with the benefit of: (a) the provisions of Massachusetts General Laws, Chapter 183A, as the same may now or hereafter be amended; (b) the Master Deed and any amendments thereto; (c) the By-Laws of The Villages at Marlborough East Condominium Association, Inc., any amendments to the same and any rules and regulations adopted from time to time pursuant thereto and all matters of record stated or referred to in the Master Deed, as completely as if each were fully set forth herein; (d) such real estate taxes attributable to said unit for the current year as are not now due and payable; and (e) the rights and reserved easements of the Grantor, its successors and assigns, by the recording of this Unit Deed, to create and construct and add additional phases to The Villages at Marlborough East Condominium, as well as the right to modify the percentage of interest, all in accordance with the provisions of the Master Deed. The Grantee hereby irrevocably authorizes and empowers the Grantor, its successors and assigns, to execute for and on behalf of the Grantees and their assigns, any amendment to the Master Deed which adds such additional phases. This authorization and power shall terminate when all of the units contemplated by the Master Deed shall have been submitted and have been added to The Villages at Marlborough East Condominium.

The garage shown on the Floor Plans filed with the Master Deed is conveyed as a part of the unit. The unit is conveyed, together with the exclusive easement and right to use one parking space as set forth in the Master Deed.

1

The unit referred to herein is laid out as shown on the unit plan recorded herewith, which unit plan is a copy of a portion of the plans filed with said Master Deed and to which is affixed a verified statement in the form required in Massachusetts General Laws, Chapter 183A, Section 9, and said unit contains the area shown on the plan recorded herewith the deed into the Seller.

The said Grantee, by the acceptance and recording of this deed, agrees that the Condominium and the subject unit are subject to the restrictions on use of the units as set forth in the Master Deed, including, but not limited to, those set forth in Section 9 of the Master Deed which reads as follows:

### 9. RESTRICTIONS ON USE OF UNITS

(a) Each Unit is hereby restricted to residential use and occupancy by senior citizens or to a senior citizen and his or her spouse. For purposes of this Master Deed, a senior citizen shall be defined as any person of age 55 or older.

(b) Every sale, resale, or other conveyance of every Unit, whether by the Declarant, or its successors, and or assigns, shall be to a senior citizen, or to the son or daughter of a senior citizen, so long as the senior citizen occupies the unit owned by his or her son or daughter.

(c) Each Residential Unit shall be occupied by no more than two persons as a single-family residence, except upon written waiver granted by the Board of Governors based upon unusual controlling circumstances which are deemed by the Board of Governors to be a hardship warranting the issuance of such waiver. This waiver provision shall also be applicable to subparagraph (a) hereunder.

(d) Overnight guests who are not senior citizens shall be allowed for reasonable visitation periods not to exceed two (2) weeks in duration, but children or grandchildren may visit for a period not to exceed two (2) weeks per year, without the written permission of the Board of Governors.

(e) Notwithstanding any provisions of this Section 9, Restrictions on Use of Units, to the contrary, the Declarant, its successors, assigns or affiliates has the right to use any Unit owned or leased by it or any common area or portion thereof or suitable facility in the Condominium for models and for offices for sales, construction, storage and any other lawful purpose. So long as Declarant owns any unit in the Condominium, it shall have the right to erect and maintain

2

"for sale" signs in and on the Common areas and facilities of the Condominium.

(f) Any lease or rental agreement for any Unit shall be to a senior citizen, or to a senior citizen and his or her spouse, in writing and specifically subject to the Master Deed, the By-Laws of the Association and the Rules and Regulations of the Condominium, including the restrictions with respect to occupancy, and shall have a minimum initial term of six (6) months. A copy of all leases or rental agreements, together with proof of age of all occupants, as executed (with the dollar amount of rent deleted at the unit owners option) shall promptly be furnished to the Board of Governors who shall keep and maintain the same as part of its records. The Board of Governors shall also be furnished at the same time with written acknowledgment of the lessee that the lessee has received copies of and will comply with the provisions of such Master Deed, By-Laws and Rules and Regulations. Notwithstanding the foregoing, the said Declarant, its successors, assigns or affiliated entities shall have the further right to let or lease to a senior citizen as defined in Section 9(a) herein, any Units which have not been sold by it, including any such Unit later acquired or later leased by it upon such terms and for such periods, but not less than thirty (30) days, as it, in it sole discretion, shall determine.

(g) The occupants of each unit shall be entitled to keep two (2) pets, either cat(s) or dog(s) per unit and the keeping of any such pet shall be subject to the Rules and Regulations adopted by the Board of Governors and in the event that any such pet, in the sole discretion of the Board of Governors, causes or creates a nuisance, said pet shall be permanently removed from the property upon three (3) days' notice. There shall be a twenty (20 lb.) Pound weight limit for dogs and all pets shall be indoor pets.

(h) All Units are conveyed subject to the conditions as set forth in the Special Permit issued by the City Council of Marlborough, recorded as Instrument Number 365 of November 19, 1997 with the Middlesex South District Registry of Deeds.

The use of Units by all persons authorized to use same shall be at all times subject to the provisions contained in this instrument, the By-Laws of the Association and such Rules and Regulations as may be prescribed and established to govern such use or which may hereafter be prescribed and established by the Board of Governors of the Association. Any Unit Owner found by the Massachusetts Superior

3

Court to be in violation of the provisions of this Master Deed, By-Laws and Rules and Regulations of the Association shall be liable for the reasonable counsel fees incurred by the association in enforcing same.

The Association also reserve the right and easement to enter onto the premises, from time to time, at reasonable hours, for the purpose of reconstructing and repairing adjoining Units, common areas and facilities and to perform any obligations of the Association required or permitted to be performed under this Master Deed and/or the By-Laws of the Association.

This conveyance does not constitute conveyance of all or substantially all of the assets of the Grantor in the Commonwealth of Massachusetts and is a conveyance in the ordinary course of business.

For Grantor's title, see deed from The Villages at Marlborough East Corporation to be recorded herewith.

**IN WITNESS WHEREOF,** First Colony Management Co., Inc. has caused its corporate seal to be hereto affixed and these presents to be signed, acknowledged and delivered in its name and behalf by David A. Franchi, its Treasurer, hereto duly authorized this _15_ day of _NOVEMBER 1999_

For authority, see Certificate of Vote recorded with the Middlesex South District Registry of Deeds on August 14, 1998 in Book 28968 Page 540

**FIRST COLONY MANAGEMENT CO., INC.**

By: _[signature]_

David A. Franchi, Treasurer and not individually

## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.                                     _NOVEMBER 15_, 199⁹

    Then personally appeared the above-named David A. Franchi, Treasurer as aforesaid, and acknowledged the foregoing instrument to be the free act and deed of First Colony Management Co., Inc., before me

_[signature] John C. O'Keefe_

Notary Public (Massachusetts)
My commission expires: February 18, 2005

4

We accept this conveyance upon the terms, conditions and covenants set forth in this Unit Deed.

Executed as an instrument under seal this _____15th_____ day of __November___, 1999 .

**GRANTEE:**

_____
**Ralph P. Vento**

_____
**June A. Vento**

## COMMONWEALTH OF MASSACHUSETTS

**MIDDLESEX, SS.**                                          Nov 15        , 1999

Then personally appeared the above-named __Ralph P. and June A. Vento__ acknowledged the foregoing instrument to be their free act and deed, before me

_____
Notary Public
My commission expires: 4/30/04

11/15/99   3:34PM   01
000030   02XXX

FEE          $798.64
CASH       $1793.64

CAMBRIDGE
DEEDS REG15
MIDLE SOUTH

5

15 Pages

EXHIBIT
B

Record and Return to:
**FINANCIAL FREEDOM SENIOR FUNDING
CORPORATION**

**192 TECHNOLOGY PKWY, SUITE 100
NORCROSS, GEORGIA 30092**

Prepared by:

**FINANCIAL FREEDOM SENIOR FUNDING
CORPORATION
192 TECHNOLOGY PKWY, SUITE 100
NORCROSS, GEORGIA 30092**

Theresa Morris

Preparer's signature



Dombrowski, Aveni & Bunnell
6 Grove Avenue
Leominster, MA 01453

2008 00198170
Bk: 51988 Pg: 184   Doc: MTG
Page: 1 of 15   12/18/2008 11:40 AM

_____ [Space Above This Line For Recording Data] _____

**Commonwealth of Massachusetts**          FHA Case No.   251-3575009-958
                                                          3000152538

# ADJUSTABLE RATE
# HOME EQUITY CONVERSION SECOND MORTGAGE

THIS MORTGAGE ("Security Instrument" or "Second Security Instrument") is given on
**DECEMBER 11, 2008**     . The mortgagor is
**Ralph P Vento and June A Vento, husband and wife tenants by the entirety**

whose address is **21 WESTMINSTER DRIVE #65,
MARLBOROUGH, MASSACHUSETTS 01752**                    ("Borrower"). This Security Instrument is
given to the Secretary of Housing and Urban Development, whose address is 451 Seventh Street, S.W., Washington,
DC 20410 ("Lender" or "Secretary"). Borrower has agreed to repay to Lender amounts which Lender is obligated to
advance, including future advances, under the terms of a Home Equity Conversion Loan Agreement dated the same
date as this Security Instrument ("Loan Agreement"). The agreement to repay is evidenced by Borrower's Note dated
the same date as this Security Instrument ("Second Note"). This Security Instrument secures to Lender: (a) the
repayment of the debt evidenced by the Second Note, with interest, at a rate subject to adjustment, and all renewals,
extensions and modifications of the Note, up to a maximum principal amount of
**FOUR HUNDRED NINETY FIVE THOUSAND AND 00/100 - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -**
(U.S. $  **495,000.00**          ); (b) the payment of all other sums, with interest, advanced under Paragraph 5 to
protect the security of this Security Instrument or otherwise due under the terms of this Security Instrument; and (c)
the performance of Borrower's covenants and agreements under this Security Instrument and the Second Note. The
full debt, including amounts described in (a), (b), and (c) above, if not paid earlier, is due and payable on
**AUGUST 31**      , 2090    . For this purpose, Borrower does hereby mortgage, grant and convey to Lender,
with power of sale, the following described property located in   **MIDDLESEX**                    County,
Massachusetts:

BD75 : 09/06                         Page 1          *  F  F  8  0  0  0  7  *

✓        ✓
R.P.V.   JAV

21 Westminster Street, Unit #65, Marlborough, MA 01752

see attached legal description

which has the address of   **21 WESTMINSTER DRIVE #65**

[Street]

**MARLBOROUGH**           **, MASSACHUSETTS**      **01752**        ("Property Address");

[City]                        [State]                  [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is only encumbered by a First Security Instrument given by Borrower and dated the same date as this Security Instrument ("First Security Instrument"). Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Second Note.

**2. Payment of Property Charges.** Borrower shall pay all property charges consisting of taxes, ground rents, flood and hazard insurance premiums, and special assessments in a timely manner, and shall provide evidence of payment to Lender, unless Lender pays property charges by withholding funds from monthly payments due to the Borrower or by charging such payments to a line of credit as provided for in the Loan Agreement. Lender may require Borrower to pay specified property charges directly to the party owed payment even though Lender pays other property charges as provided in this Paragraph.

**3. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire. This insurance shall be maintained in the amounts, to the extent and for the periods required by Lender. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss to Lender instead of to Borrower and Lender jointly. Insurance proceeds shall be applied to restoration or repair of the damaged Property, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied first to the reduction of any indebtedness under the Second Note

and this Security Instrument. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Second Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**4. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence after the execution of this Security Instrument, and Borrower (or at least one Borrower, if initially more than one person are Borrowers) shall continue to occupy the Property as Borrower's principal residence for the term of the Security Instrument. "Principal residence" shall have the same meaning as in the Loan Agreement.

Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**5. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments. Borrower shall promptly discharge any lien which has priority over this Security Instrument in the manner provided in Paragraph 12(c).

If Borrower fails to make these payments or the property charges required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

To protect Lender's security in the Property, Lender shall advance and charge to Borrower all amounts due to the Secretary for the Mortgage Insurance Premium as defined in the Loan Agreement as well as all sums due to the loan servicer for servicing activities as defined in the Loan Agreement. Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower as provided for in the Loan Agreement and shall be secured by this Security Instrument.

**6. Inspection.** Lender or its agent may enter on, inspect or make appraisals of the Property in a reasonable manner and at reasonable times provided that Lender shall give the Borrower notice prior to any inspection or appraisal specifying a purpose for the inspection or appraisal which must be related to Lender's interest in the Property. If the property is vacant or abandoned or the loan is in default, Lender may take reasonable action to protect and preserve such vacant or abandoned Property without notice to the Borrower.

**7. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation shall be paid to Lender. The proceeds shall be applied first to the reduction of any indebtedness under a Second Note and this Security Instrument. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Second Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary for the Home Equity Conversion Mortgage Insurance Program.



**9. Grounds for Acceleration of Debt.**

**(a) Due and Payable.** Lender may require immediate payment in full of all sums secured by this Security Instrument if:

    (i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower; or

    (ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple or retains a leasehold under a lease for less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower or retains a life estate (or retaining a beneficial interest in a trust with such an interest in the Property); or

    (iii) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower; or

    (iv) For a period of longer than twelve (12) consecutive months, a Borrower fails to occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

    (v) An obligation of the Borrower under this Security Instrument is not performed.

**(b) Notice to Lender.** Borrower shall notify Lender whenever any of the events listed in Paragraph 9(a)(ii)-(v) occur.

**(c) Notice to Borrower.** Lender shall notify Borrower whenever the loan becomes due and payable under Paragraph 9 (a)(ii)-(v). Lender shall not have the right to commence foreclosure until Borrower has had thirty (30) days after notice to either:

    (i) Correct the matter which resulted in the Security Instrument coming due and payable; or

    (ii) Pay the balance in full; or

    (iii) Sell the Property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale toward the balance; or

    (iv) Provide the Lender with a deed in lieu of foreclosure.

**(d) Trusts.** Conveyance of Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph 9. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph 9.

**10. No Deficiency Judgments.** Borrower shall have no personal liability for payment of the debt secured by this Security Instrument. Lender may enforce the debt only through sale of the Property. Lender shall not be permitted to obtain a deficiency judgment against Borrower if the Security Instrument is foreclosed.

**11. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full. This right applies even after foreclosure proceedings are instituted. To reinstate this Security Instrument, Borrower shall correct the condition which resulted in the requirement for immediate payment in full. Foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding shall be added to the principal balance. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the Security Instrument.

BD78 : 09/06

Page 4

**12. Lien Status.**

   **(a) Modification.** Borrower agrees to extend this Security Instrument in accordance with this Paragraph 12(a). If Lender determines that the original lien status of the Security Instrument is jeopardized under state law (including but not limited to situations where the amount secured by the Security Instrument equals or exceeds the maximum principal amount stated or the maximum period under which loan advances retain the same lien priority initially granted to loan advances has expired) and state law permits the original lien status to be maintained for future loan advances through the execution and recordation of one or more documents, then Lender shall obtain title evidence at Borrower's expense. If the title evidence indicates that the Property is not encumbered by any liens (except the First Security Instrument described in Paragraph 13(a), this Second Security Instrument and any subordinate liens that the Lender determines will also be subordinate to any future loan advances), Lender shall request the Borrower to execute any documents necessary to protect the lien status of future loan advances. Borrower agrees to execute such documents. If state law does not permit the original lien status to be extended to future loan advances, Borrower will be deemed to have failed to have performed an obligation under this Security Instrument.

   **(b) Tax Deferral Programs.** Borrower shall not participate in a real estate tax deferral program, if any liens created by the tax deferral are not subordinate to this Security Instrument.

   **(c) Prior Liens.** Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to all amounts secured by this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**13. Relationship to First Security Instrument.**

   **(a) Second Security Instrument.** In order to secure payments which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to execute a Second Note and this Second Security Instrument. Borrower also has executed a First Note and First Security Instrument.

   **(b) Relationship of First and Second Security Instruments.** Payments made by the Secretary shall not be included in the debt under the First Note unless:

   (i) The First Security Instrument is assigned to the Secretary; or

   (ii) The Secretary accepts reimbursement by the holder of the First Note for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, but excluding late charges paid by the Secretary, shall be included in the debt under the First Note.

   **(c) Effect on Borrower.** Where there is no assignment or reimbursement as described in (b)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not:

   (i) Be required to pay amounts owed under the First Note, or pay any rents and revenues of the Property under Paragraph 19 to the holder of the First Note or a receiver of the Property, until the Secretary has required payment in full of all outstanding principal and accrued interest under the Second Note; or

   (ii) Be obligated to pay interest or shared appreciation under the First Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance under the First Note.

   **(d) No Duty of the Secretary.** The Secretary has no duty to the holder of the First Note to enforce covenants of the Second Security Instrument or to take actions to preserve the value of the Property, even



though the holder of the First Note may be unable to collect amounts owed under the First Note because of restrictions in this Paragraph 13.

(e) **Restrictions on Enforcement.** Notwithstanding anything else in this Security Instrument, the Borrower shall not be obligated to comply with the covenants hereof, and Paragraph 19 shall have no force and effect, whenever there is no outstanding balance under the Second Note.

**14. Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**15. Successors and Assigns Bound; Joint and Several Liability.** Borrower may not assign any rights or obligations under this Security Instrument or the Second Note, except to a trust that meets the requirements of the Secretary. Borrower's covenants and agreements shall be joint and several.

**16. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address all Borrowers jointly designate. Any notice to the Secretary shall be given by first class mail to the HUD Field Office with jurisdiction over the Property or any other address designated by the Secretary. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this Paragraph 16.

**17. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Second Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Second Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Second Note are declared to be severable.

**18. Borrower's Copy.** Borrower shall be given one conformed copy of the Second Note and this Security Instrument.

NON-UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**19. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by this Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 19, except as provided in the First Security Instrument.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by this Security Instrument is paid in full.

**20. Foreclosure Procedure. If Lender requires immediate payment in full under Paragraph 9, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permittted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 20, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

BD80 : 09/06                          Page 6



RPV          JAV

**If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by applicable law, in the manner provided by applicable law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by applicable law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**21. Lien Priority.** The full amount secured by this Security Instrument shall have a lien priority subordinate only to the full amount secured by the First Security Instrument.

**22. Adjustable Rate Feature.** Under the Second Note, the initial stated interest rate of    2.1900    % which accrues on the unpaid principal balance ("Initial Interest Rate") is subject to change, as described below. When the interest rate changes, the new adjusted interest rate will be applied to the total outstanding principal balance. Each adjustment to the interest rate will be based upon the weekly average yield on United States Treasury Securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board in Statistical Release H.15 (519) ("Index") plus a margin. If the Index is no longer available, Lender will use as a new Index any index prescribed by the Secretary. Lender will give Borrower notice of the new Index.

Lender will perform the calculations described below to determine the new adjusted interest rate. The interest rate may change on the first day of **MARCH, 2009**        , and on  ☐  that day of each succeeding year ☒ the first day of each succeeding month ("Change Date") until the loan is repaid in full.

The value of the Index will be determined, using the most recent Index figure available thirty (30) days before the Change Date ("Current Index"). Before each Change Date, the new interest rate will be calculated by adding a margin to the Current Index. The sum of the margin plus the Current Index will be called the "Calculated Interest Rate" for each Change Date. The Calculated Interest Rate will be compared to the interest rate in effect immediately prior to the current Change Date (the "Existing Interest Rate").

☐   (Annually Adjusting Variable Rate Feature) The Calculated Interest Rate cannot be more than 2.0% higher or lower than the Existing Interest Rate, nor can it be more than 5.0% higher or lower than the Initial Interest Rate.

☒   (Monthly Adjusting Variable Rate Feature) The Calculated Interest Rate will never increase above **TWELVE AND 190/1000**                percent (**12.19000**        %).

The Calculated Interest Rate will be adjusted if necessary to comply with these rate limitation(s) and will be in effect until the next Change Date. At any Change Date, if the Calculated Interest Rate equals the Existing Interest Rate, the interest rate will not change.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**24. Waivers.** Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the property.

**25. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es).]

☒ Condominium Rider     ☐ Shared Appreciation Rider     ☐ Planned Unit Development Rider

☐ Other (Specify)

BD81 : 09/06                    Page 7

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____ (Seal)
**RALPH P VENTO**                                                   -Borrower

_____ (Seal)
**JUNE A VENTO**                                                    -Borrower

_____ (Seal)
                                                                   -Borrower

_____ (Seal)
                                                                   -Borrower

_____ (Seal)
                                                                   -Borrower

_____ (Seal)
                                                                   -Borrower

_____ (Seal)
                                                                   -Borrower

_____ (Seal)
                                                                   -Borrower

BD82 : 07/07                    Page 8

* F F 8 0 0 0 7 *

--- [Space Below This Line For Acknowledgment] ---

**COMMONWEALTH OF MASSACHUSETTS,**        **COUNTY SS:**

On this      day of              , before me personally appeared

to me known to be the person described in and who executed the foregoing instrument, and acknowledged that
       executed the same as           free act and deed.

Notary Public

[SEAL]        My Commission Expires: _____

# COMMONWEALTH OF MASSACHUSETTS

**WORCESTER, SS**

On this 1th day of December, 2008, before me, the undersigned notary public, personally
appeared **Ralph P. Vento and June A. Vento,** proved to me through satisfactory evidence of
identification, which was _MASS MV Li l ._ (source of identification), to be the
persons whose names are signed on the preceding or attached document, and who swore or
affirmed to me that the contents of the document are truthful and accurate to the best of their
knowledge and belief.

Notary Public: Jeffrey A. Aveni
My Commission Expires: 1/28/2011

MG80 : 07/07            Page 9        * F F 8 0 0 0 7 *

251-3575009-958
3000152538

# CONDOMINIUM RIDER
## (Home Equity Conversion Mortgage)

THIS CONDOMINIUM RIDER is made this **11TH** day of **DECEMBER, 2008** , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to
**SECRETARY OF HOUSING AND URBAN DEVELOPMENT**

("Lender") of the same date and covering the Property described in the Security Instrument and located at:
**21 WESTMINSTER DRIVE #65**
**MARLBOROUGH, MASSACHUSETTS 01752**
[Property Address]
The Property includes a unit in, together with an undivided interest in the common elements of, a condominium project known as:
**THE VILLAGES AT MARLBOROUGH EAST CONDOMINIUM**
[Name of Condominium Project]
("Condominium Project"). If the owners association or other entity which acts for the Condominium Project ("Owners Association") holds title to property for the benefit or use of its members or shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of Borrower's interest.

**CONDOMINIUM COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A.    So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring all property subject to the condominium documents, including all improvements now existing or hereafter erected on the Property, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender or the Secretary require, including fire and other hazards included within the term "extended coverage," and loss by flood, to the extent required by the Secretary, then: (i) Lender waives the provision in Paragraph 2 of this Security Instrument for the payment of the premium for hazard insurance on the Property; and (ii) Borrower's obligation under Paragraph 3 of this Security Instrument to maintain hazard insurance coverage on the

81BC : 10/05                                    Page 1



J     J
RPV     JAV

3000152538

Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy. Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the condominium unit or to the common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

B.   Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the Condominium Project.

C.   If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this Paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate.

[Acknowledgment of following page]



82BC : 02/08                              Page 2

3000152538

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Condominium Rider.

_____ Ralph P Vento _____ (Seal)
**RALPH P VENTO**                                                     -Borrower

_____ June A Vento _____ (Seal)
**JUNE A VENTO**                                                     -Borrower

_____ (Seal)
                                                                     -Borrower

_____ (Seal)
                                                                     -Borrower

_____ (Seal)
                                                                     -Borrower

_____ (Seal)
                                                                     -Borrower

_____ (Seal)
                                                                     -Borrower

_____ (Seal)
                                                                     -Borrower

HT41 : 02/08                              Page 3



EXHIBIT "A"
Property Description

Unit No. 65 in Building No. 13 located at 21 Westminster Drive (a B/2 car Unit) in The Villages at Marlborough East Condominium in Marlborough, Middlesex County, Massachusetts, created by a Master Deed dated August 6, 1998, recorded with the Middlesex South District Registry of Deeds as Instrument No. 799 of August 10, 1998, as it may be amended from time to time by instruments duly recorded (the "Condominium"), together with an undivided percent interest appertaining to said unit in the common areas and facilities of said Condominium as set forth in the Master Deed, as it may be amended from time to time.

This unit shall have a **0.995%** undivided interest in the common areas and facilities of said Condominium upon completion of all of the phases of the Condominium.

The said premises are conveyed subject to and with the benefit of: (a) the provisions of Massachusetts General Laws, Chapter 183A, as the same may now or hereafter be amended; (b) the Master Deed and any amendments thereto; (c) the By-Laws of the Villages at Marlborough East Condominium Association, Inc., any amendments to the same and any rules and regulations adopted from time to time pursuant thereto and all matters of record stated or referred to in the Master Deed, as completely as if each were fully set forth herein; (d) such real estate taxes attributable to said unit for the current year as are not now due and payable; and (e) the rights and reserved easements of the Grantor, its successors and assigns, by the recording of this Unit Deed, to create and construct and add additional phases to The Villages at Marlborough East Condominium, as well as the right to modify the percentage of interest, all in accordance with the provisions of the Master Deed. The Grantee hereby irrevocably authorizes and empowers the Grantor, its successors and assigns, to execute for and on behalf of the Grantees and their assigns, any amendment to the Master Deed which adds such additional phases. This authorization and power shall terminate when all of the units contemplated by the Master Deed shall have been submitted and have been added to The Villages at Marlborough East Condominium.

The garage shown on the Floor Plans filed with the Master Deed is conveyed as a part of the unit. The unit is conveyed, together with the exclusive easement and right to use one parking space as set forth in the Master Deed.

The unit referred to herein is laid out as shown on the unit plan recorded herewith, which unit plan is a copy of a portion of the plans filed with said Master Deed and to which is affixed a verified statement in the form required in Massachusetts General Laws, Chapter 183A, Section 9, and said unit contains the area shown on the plan recorded herewith the deed into the Seller.

The said Grantee, by the acceptance and recording of this deed, agrees that the Condominium and the subject unit are subject to the restrictions on use of the units as set forth in the Master Deed, including, but not limited to, those set forth in Section 9 of the Master Deed which reads as follows:

RESTRICTIONS ON USE OF UNITS

(a) Each Unit is hereby restricted to residential use and occupancy by senior citizens or to a senior citizen and his or her spouse. For purposes of this Master Deed, a senior citizen shall be defined as any person of age 55 or older.

(b) Every sale, resale, or other conveyance of every Unit, whether by the Declarant, or its successors, and or assigns, shall be to a senior citizen, or to the son or daughter of a senior citizen, so long as the senior citizen occupies the unit owned by his or her son or     daughter.

(c) Each Residential Unit shall be occupied by no more than two persons as a single-family residence, except upon written waiver granted by the Board of Governors based upon unusual controlling circumstances which are deemed by the Board of Governors to be a hardship warranting the issuance of such waiver. This waiver provision shall also be applicable to subparagraph (a) hereunder.

(d) Overnight guests who are not senior citizens shall be allowed for reasonable visitation periods not to exceed two (2) weeks in duration, but children or grandchildren may visit for a period not to exceed two (2) weeks per year, without the written permission of the Board of Governors.

(e) Notwithstanding any provisions of this Section 9, Restrictions on Use of Units, to the contrary, the Declarant, its successors, assigns or affiliates has the right to use any Unit owned or leased by it or any common area or portion thereof or suitable facility in the Condominium for models and for offices for sales, construction, storage and any other lawful purpose. So long as Declarant owns any unit in the Condominium, it shall have the right to erect and maintain "for sale" signs in and on the Common areas and facilities of the Condominium.

(f) Any lease or rental agreement for any Unit shall be to a senior citizen, or to a senior citizen and his or her spouse, in writing and specifically subject to the Master Deed, the By-Laws of the Association and the Rules and Regulations of the Condominium, including the restrictions with respect to occupancy, and shall have a minimum initial term of six (6) months. A copy of all leases or rental agreements, together with proof of age of all occupants, as executed (with the dollar amount of rent deleted at the unit owners option) shall promptly be furnished to the Board of Governors who shall keep and maintain the same as part of its records. The Board of Governors shall also be furnished at the same time with written acknowledgment of the lessee that the lessee has received copies of and will comply with the provisions of such Master Deed, By-Laws and Rules and Regulations. Notwithstanding the foregoing, the said Declarant, its successors, assigns or affiliated entities shall have the further right to let or lease to a senior citizen as defined in Section 9(a) herein, any Units which have not been sold by it, including any such Unit later acquired or later leased by it upon such terms and for such periods, but not less than thirty (30) days, as it, in it sole discretion, shall determine.

(g) The occupants of each unit shall be entitled to keep two (2) pets, either cat(s) or dog(s) per unit and the keeping of any such pet shall be subject to the Rules and Regulations adopted by the Board of Governors and in the event that any such pet, in the sole discretions of the Board of Governors, causes or creates a nuisance, said pet shall be permanently removed from the property upon three (3) days' notice. There shall be a twenty (20 Lb.) Pound weight limit for dogs and all pets shall be indoor pets.

(h) All Units are conveyed subject to the conditions as set forth in the Special Permit issued by the City Council of Marlborough, recorded as Instrument Number 365 of November 19, 1997 with the Middlesex South District Registry of Deeds.

The use of Units by all persons authorized to use same shall be at all times subject to the provisions contained in this instrument, the By-Laws of the Association and such Rules and Regulations as may be prescribed and established to govern such use or which may hereafter be prescribed and established by the Board of Governors of the Association.  Any Unit Owner found by the Massachusetts Superior Court to be in violation of the provisions of this Master Deed, By-Laws and Rules and Regulations of the Association shall be liable for the reasonable counsel fees incurred by the association in enforcing same.

The Association also reserve the right and easement to enter onto the premises, from time to time, at reasonable hours, for the purpose of reconstructing and repairing adjoining Units, common areas and facilities and to perform any obligations of the Association required or permitted to be performed under this Master Deed and/or the By-Laws of the Association.

Being the same premises conveyed to us by Deed of First Colony Management Co., Inc. by Unit Deed dated November 15, 1999, recorded in the Middlesex South District Registry of deeds in Book 30866, Page 498.